UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re: | ) | Case Number 6:18-bk-01724-CCJ |
| Wilson, Adam Benjamin | ) | Chapter 7 |
| Wilson, Julie Ann | ) | |
| | ) | |
| Debtor(s). | ) | |

**CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND CENTURY 21 CARIOTI TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 AND 330**

**Dennis Kennedy**, as Chapter 7 Trustee (the "Trustee") for the above referenced debtor(s) (together, the "Debtor"), by and through the undersigned counsel, files this Application for entry of an order authorizing retention of (1) BK Global Real Estate Services ("BKRES") under the terms set forth in the agreement (the "BKRES Agreement") attached to BKRES' Affidavit of Disinterestedness at *Exhibit A* (the "BKRES Affidavit") and (2) Century 21 Carioti  ("Listing Agent") under the terms of the agreement (the "Listing Agreement") attached to Listing Agent's Affidavit of Disinterestedness at *Exhibit B* (the "Listing Agent Affidavit").  In support thereof, the Trustee respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

3. On 03/28/2018, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4. Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

5. The Trustee held and concluded the 341 meeting on 05/08/2018.

6. The Debtor is the sole owner of real property located at **409 Grant St, Port Orange, FL 32127** (the "Property").

7. The Debtor has no equity in the Property. The Debtor's schedules reflect that the Property is currently worth $58,717.00, but is subject to a first mortgage lien (the "Senior Mortgage") in favor of Mr. Cooper (the "Secured Creditor") in an amount exceeding $110,004.00.

8. The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to do the following, with the proviso that the hired professionals, BKRES and Local Agent, shall not participate in the sale and purchase of any estate property except as hired Brokers:

   a. sell the Property under 11 U.S.C. § 363(b) to whichever third party Trustee determines to have made the best qualified offer during a public sale approved by the court;

    b. release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

    c. agree to a 11 U.S.C. § 506 surcharge to pay all of the customary expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a meaningful carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

9. Trustee expects BKRES and Listing Agent to obtain Secured Creditor's full, final and unconditional Consent and bring a separate motion seeking an order approving the sale of the Property (the "Motion to Approve Sale") within several months of the entry of the order sought by this Application.

10. By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to **provide the necessary professional assistance and representation required by the Trustee to fulfill the Trustee's duties pursuant to 11 U.S.C. § 704 in order to** procure Secured Creditor's Consent, (b) approve Secured Creditor's payment of the fees described herein and below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

#### APPLICATION

11. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]… and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Compensation will be determined later in accordance with 11 U.S.C. §330.

12. As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity. [An expedited sale of the estate Property securing an allowed secured claim in this case pursuant to Section 363 of the Bankruptcy Code will enhance the bankruptcy relief sought by the Debtor(s), provide a recovery of value for the bankruptcy estate that will result in a meaningful distribution to unsecured creditors, and provide direct equitable benefits to the Secured Creditor in the following ways:

    a.    in exchange for an expedited free and clear sale and realization of the current fair market value of the Property by the Secured Creditor, the Debtor's

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

estate will be released from the Senior Mortgage and any deficiency claims resulting from the sale;

b.      an expedited free and clear sale of the Property will provide a loss mitigation option that enables the Secured Creditor and Debtors to avoid the substantial expense of foreclosure proceedings and the damaging impact of foreclosure on the financial recovery of the bankrupt Debtors and their ability to obtain future credit;

c.      an expedited free and clear sale of the Property will provide a negotiated cash payment as a meaningful recovery of value for the bankruptcy estate and the unsecured creditors;

d.      an expedited free and clear sale of the Property will eliminate the need for a foreclosure sale and enable the Secured Creditor to limit its expenses to legal costs, property preservation costs, insurance, and taxes; and,

e.      the Debtors' voluntary surrender of the Property to the administration of the Trustee and the Secured Creditor's consent to the sale of the Property will enable the Trustee to use the forces of a free market to establish the true fair market value of the Property for the benefit of all interested and affected parties.]

13.     The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear.  The Trustee further believes that such a sale is in the best interest of the Debtor's estate, but can only be achieved if Secured Creditor's Consent is first obtained.  That is why the Trustee believes that retaining BKRES and

Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

14. In no event will the estate have any obligation to pay BKRES or Listing Agent for their services, or to pay for customary title and closing services. The terms of the BKRES Agreement and Listing Agreement and this Application provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission and obtain reimbursement of any out-of-pocket expenses and payment for all other expenses associated with the sale of the Property from the sale proceeds at closing in accordance with the order approving the sale.

15. BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

16. The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

17. BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as *Exhibit A* is an Affidavit of Disinterestedness of BKRES. BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent, or a buyer's Agent, if applicable.

18. Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as *Exhibit B* is an Affidavit of Disinterestedness of Listing Agent. Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES, or a buyer's Agent, if applicable.

## CONCLUSION

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement and this Application pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code.

Dated: July 11, 2018

/s/ Dennis D. Kennedy
Dennis D Kennedy, Trustee
P O Box 541848
Merritt Island, FL 32954
Telephone: (321) 455-9744
Facsimile: (321) 445-9888

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re:  :  Chapter 7
 :
 :  Case No. 18-01724
 :
Debtor  :
Adam Wilson  :
Julie Wilson  :
 :

### DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND CENTURY 21 CARIOTI TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

The undersigned, Patrick Butler ("Declarant") hereby states:

1. I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"), which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487. I am Applicant's broker-in-charge and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2. Based upon the information discussed below, I believe that Applicant is a disinterested person and does not hold or represent any interest adverse to the interest of the Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3. To the best of my knowledge: (a) neither BKRES nor any of its employees has any connection with the Debtor, its creditors in this case, the Chapter 7 Trustee, the Office of the United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and each of its employees are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

1

3.    A description of the qualifications of, and services provided by, BKRES is attached as Schedule 1.

4.    That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

5.    That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as fully set forth in the BKRES Agreement that is attached as Schedule 2 hereto, as it deems appropriate.

Verified under penalty of perjury that the foregoing is true and correct this 28 day of June, 2018.

Patrick Butler
Broker-in-Charge

The foregoing instrument was sworn to and subscribed before me this 28th day of June, 2018, by Patrick Butler who provided identification or is personally known to me and who did take an oath.

NOTARY PUBLIC

Notary Public, State of Florida

My Commission Expires



Notary Public State of Florida
Lyda Castro
My Commission FF 905572
Expires 08/03/2019

## SCHEDULE 1

## STATEMENT OF QUALIFICATIONS AND SERVICES OF BKRES

BK Global™

BK Global™ is a national company with a bankruptcy service platform containing a network of certified BK real estate Brokers and Agents, a national marketplace for listing and submitting bankruptcy real estate purchase offers (www.bkglistings.com), and a centralized team of loan servicing specialist that enable Federal Trustees to streamline and manage their real estate needs most effectively for the benefit of the bankruptcy estate and unsecured creditors. By integrating its unique services and implementing its proprietary tools, BK Global is poised to create industry standards and efficiencies.

Consented Sale™

A Consented Sale™ is an "enhanced" agreement between all requisite stakeholders, the most important being the lender/servicer, of a residential or commercial property for less than what the owner still owes on the mortgage. A Consented Sale™ is a beneficial alternative to foreclosure when a homeowner needs to sell and can no longer afford to make their mortgage payments. The lender agrees to accept less than the amount owed to pay off a loan now rather than taking the property back by foreclosure and trying to sell it later. Lenders agree to a Consented Sale™ because they believe it will net them more money than going forward with a lengthy and costly foreclosure process.

BK Score™

BK Score™ is generated from a finite set of data points in a prescribed sequence to achieve a resulting score between the values of 1 and 100. The BK Score™ is shared with trustees, servicers, courts, and software management platforms and indicates the likelihood that an asset in a bankruptcy is qualified for consented disposition. The higher the BK Score™ there is a better chance to sell the property. In addition to the presented scores, BK Global provides the trustee a solution to sell the asset which maximizes the benefit to the estate. BK Global™ is at the forefront of creating new industry standards for trustee services.

To consistently measure and predict market value of real estate assets nationally, in an ever changing and fluid real estate market, it is important to have a well-defined methodology that explains how values are derived. The BK Score™ uses multiple data points to predict sales confidence compared to the limited local market inputs used by real estate brokers who are not certified in short sales. BK Score™ incorporates a number of unique methodology questions that include the data points listed below.

**Highlighted BK Score™ Data Points**
- Asset Value / Liabilities / Liens
- Judicial / Non-judicial State Analysis
- Pro Se (Professional Legal Representation)
- Title Search
- Statement of Intent by Debtor
- Foreclosure Timeline Analysis
- Redemption Period Analysis
- Community / Non-community Asset
- Asset Valuation Model (AVM)

## BK Score™ Core Benefits

**Increased Confidence of a Consented Short Sale** – BK Score™ gives lenders, servicers and real estate professionals more precise information on which to determine baseline sales values to achieve a successful consented short sale.

**Accelerates the Short Sale Decision Process** – Technology that utilizes scoring systems allows lenders/servicers to make instant valuation and sales consent decisions. This is notable as applications for consented sale of property can be approved by lenders/servicers in hours rather than weeks for sales values which score above a lender's score cutoff.

**Reduces Risk of Completing a Cooperative Short Sale** – There are certain barriers to a short sale. Servicers are frequently wary of short sale offers because of concerns that they are settling the debt at too low a price. Greater probability that servicers will consent to a short sale is made possible thanks to BK Score™. The BK Score™ empowers any lender/servicer to quickly set a cut off price and begin the short sale process, without time-consuming phone calls, faxed documents, or any effort from the agent or trustee.

**Increases Transaction Transparency** – BK Global™ is integrated with most major lender/servicers nationally. The BK Score™, which has revolutionized the default servicing industry, helps servicers select and execute optimal baseline valuations based on measurable guidelines while driving efficiency, fostering transparency and facilitating compliance. With the use of BK Score™ agents and trustees can quickly collaborate and determine an appropriate list price that allow agents to begin pursuing sales offers with confidence.

The BK Score™ algorithm has been developed by industry experts that have over 30 years of experience in Distressed Real Estate and Bankruptcy Sales. To date, over 2 years of bankruptcy assets have been analyzed and scored using the BK Global Scoring system. BK Score™ is a trademark pending registration with the US Trademark and Patent Office.

## SCHEDULE 2

**AGREEMENT BETWEEN BKRES AND THE CHAPTER 7 TRUSTEE**

[Attached]



June 28, 2018

Dennis Kennedy
Chapter 7 Trustee
541848 PO Box
Merritt Island, FL 32954
E-mail: dee@ddkennedy.com

Re:   Adam Wilson & Julie Wilson
      Agreement to Negotiate Real Estate Sale for 409 Grant St, Port Orange, FL 32127

Dear Trustee Kennedy:

This letter confirms the Agreement to Negotiate a Real Estate Sale for the referenced property ("Property") and confirms the undersigned's ("our," "we" or "us") agreement to negotiate a Real Estate Sale on the following terms and conditions (collectively, the "Agreement") with the provision that the hired professionals, BKRES or Local Agent, shall not participate in the sale and purchase of any estate property except as hired brokers:

   1.   Following your signature approving this Agreement, we and our affiliate, Bankruptcy Global Holdings, LLC, D/B/A Bk Global will make commercially reasonable efforts to procure the consent and agreement ("Consent") of the senior mortgagee ("Secured Creditor") to:

        a.   sell the Property under 11 U.S.C. § 363(b) to whichever third party you determine to have made the best qualified offer during a public sale approved by the court or agree to 11 U.S.C. § 363(k) and place a credit bid on the Property from the estate;

        b.   release its lien with respect to the Property; and

        c.   agree to a 11 U.S.C. § 506 surcharge to (x) pay our fee and expenses, any commission payable to the local real estate broker and all other fees and expenses associated with the sale, and (y) provide a carve-out for the benefit of allowed unsecured creditors of the estate.

   2.   We will select a local real estate broker to co-list the property. You will retain both BK Global and the local real estate broker to market the Property for sale to the public under a separate listing agreement. We will assist them by coordinating all aspects of the listing and sale process that involve Secured Creditor's Consent. We will also prepare and deliver any and all reports and information about the Consent, listing and sale process that you reasonably require. However, the local listing broker will be solely responsible for providing you with all other brokerage services associated with selling the Property, including inspecting it to confirm condition and occupancy, preparing any comparative market analysis and/or Broker's Price Opinion (BPO), recommending a listing price, preparing marketing materials, including photographs and sign-age, and displaying the same at the Property and on the Multiple Listing Service, conducting all open houses and showings, and helping you evaluate and negotiate purchase offers, all at their sole cost and expense.

1

**Dennis Kennedy, Trustee**
**Agreement to Negotiate Consented Sale**
**409 Grant St, Port Orange, FL 32127**
**Adam Wilson & Julie Wilson**

3. The term of this Agreement will commence when you sign and return a copy of this letter and the court approves it. This Agreement will automatically terminate upon the closing of the sale of the Property, or it may be terminated by either party for any or no reason after 180 days from commencement. In addition, this Agreement will be terminated if the Chapter 7 Trustee files a Report of No Distribution, files a Notice of Abandonment of the subject property, or submits a Trustee's Final Report to the Office of the United States Trustee.

4. There will be no fees due to, or payable by, either party under this Agreement, and neither party will be reimbursed by the other party for any cost or expense. Subject to the foregoing, you acknowledge and agree that our fee and expenses will be paid by Secured Creditor as a 11 U.S.C. § 506 surcharge, if and to the extent that Secured Creditor agrees, and the court approves. You further acknowledge and agree that, if the Property is sold to a third party, we may receive some or all of our fee and expenses under a fee agreement with the local listing broker.

5. You will make commercially reasonable efforts to assist us in procuring Secured Creditor's Consent and marketing and selling the Property and hereby appoint us as your agent to act on your behalf as trustee in connection with the same.

6. We acknowledge and agree that (a) you are not executing this Agreement in your individual capacity, but solely as trustee of the estate, (b) we do not and will not have any right or claim with respect to the estate and (c) our sole recourse for payment of our fee and expenses will be to Secured Creditor under the Consent and the local listing broker under our fee agreement, but only if and to the extent that the same are approved by the court.

7. This Agreement constitutes our complete agreement on this matter and supersedes all prior agreements and representations concerning the same. It may not be modified or amended except in a writing signed by both parties.

Please let us know if you have any questions regarding the foregoing or enclosed materials. Otherwise, kindly confirm your agreement by signing and returning this letter to retain us at your earliest convenience.

We look forward to working with you.

Sincerely,

**BK GLOBAL:**

**BK GLOBAL REAL ESTATE SERVICES**, a Florida limited liability company

By: _____
Patrick Butler, Broker-in-Charge

Acknowledged and agreed as of the date set forth above.

**TRUSTEE:**
_____
**DENNIS KENNEDY**, not individually but solely as Trustee in the referenced matter.

EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA

In re:  Case No. 18-01724
Chapter 7

**Adam Wilson**
**Julie Wilson**

**Debtors**         /

## AFFIDAVIT OF KAVITA UTTAMCHANDANI IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND CENTURY 21 CARIOTI TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

STATE OF FLORIDA       )
                       )
COUNTY OF Volusia      )

Kavita Uttamchandani, being duly sworn, says:

1. I am a real estate agent duly licensed by the State of Florida.

2. I am an agent of Century 21 Carioti a Florida Corporation, with corporate offices located at 1650 Sand Lake Rd, Ste 107, Orlando, FL 32809 ("Listing Agent").

3. I am familiar with the Application to Retain Century 21 Carioti, filed by the Trustee ("Application") and the property described therein.

4. I believe that I am experienced and qualified to represent the Trustee in connection with the marketing and sale of the real property located at 409 Grant St, Port Orange, FL 32127 (the "Property").

5. Century 21 Carioti has agreed to accept employment pursuant to the terms and conditions set forth in the Application and the proposed commission structure. Based upon my experience and knowledge of the real estate market, I believe that the commission structure proposed to be paid to Listing Agent does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

1

6. Neither I nor any member of Century 21 Carioti hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

7. To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtors, their creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

8. I represent no interest adverse to the Debtors or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Kavita Uttamchandani of
Century 21 Carioti

**Exclusive Right of Sale Listing Agreement** 

1   This Exclusive Right of Sale Listing Agreement ("Agreement") is between
2*  Dennis Kennedy, BK Trustee for the estate of Adam and Julie Wilson _____ ("**Seller**")
3*  and _____ CENTURY 21 CARIOTI /Kavita Uttamchandani _____ ("**Broker**").

4   1. **Authority to Sell Property: Seller** gives **Broker** the EXCUSIVE RIGHT TO SELL the real and personal property
5      (collectively "Property") described below, at the price and terms described below, beginning
6*     _____ and terminating at 11:59 p.m. on _____ ("Termination Date"). Upon
7      full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8      automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9      that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10     color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11     law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  2. **Description of Property:**
13*    (a) **Street Address:** 409 Grant Street, Port Orange, FL 32127 _____
14     _____
15*    **Legal Description:** E 68 FT OF LOTS 76 & 77 MARSHALLS ADD PORT ORANGE PER MB 5 PG 77 PER OR 3801 PG 2069 PER OR 3809 PG 2682 PER OR 4009 PG 2433 PER OR 5575 PG 2162 PER OR 5877 PG 3100
16*    _____ ☐ See Attachment _____

17*    (b) **Personal Property, including appliances:** NONE _____
18*    _____ ☐ See Attachment _____

19     (c) **Occupancy:**
20*    Property ☐ is ☑ is not currently occupied by a tenant. If occupied, the lease term expires _____

21  3. **Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*    (a) **Price:** $_____
23*    (b) **Financing Terms:** ☑ Cash ☑ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*    ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $ _____
25*    with the following terms: _____
26*    ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $ _____ plus
27*    an assumption fee of $ _____ The mortgage is for a term of _____ years beginning in
28*    _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____
29**   Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller: (1)** You may
30     remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31     lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32     escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33     **(2)** Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34     authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35     whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36     advised to consult with a legal or mortgage professional to make this determination.
37*    (c) **Seller Expenses: Seller** will pay mortgage discount or other closing costs not to exceed _____% of the
38     purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39  4. **Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40     contract is pending on the Property.

41  5. **Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42     because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43     obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44     directs **Broker** otherwise in writing. **Seller** authorizes **Broker** to report to the MLS this listing information and price,
45     terms, and financing information on any resulting sale for use by authorized Board / Association members and
46     MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

Seller [DDK] and Broker/Sales Associate [KU 06/28/18 6:35PM EDT] acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-16tb  Rev 03/14                                            © 2014 Florida Association of Realtors®

47  6. **Broker Authority: Seller** authorizes **Broker** to:
48     **(a)** Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless
49         limited in (6)(a)(i) or (6)(a)(ii) below.
50         **(Seller opt-out) (Check one if applicable)**
51*         **(i)** ☐ Display the Property on the Internet except the street address.
52*         **(ii)** ☐ **Seller** does not authorize **Broker** to display the Property on the Internet.
53         **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings
54         on the Internet will not see information about the Property in response to their search.
55*         [DDK]/[____] Initials of Seller
56     **(b)** Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller**
57         signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.
58     **(c)** Obtain information relating to the present mortgage(s) on the Property.
59     **(d)** Provide objective comparative market analysis information to potential buyers.
60*     **(e) (Check if applicable)** ☑ Use a lock box system to show and access the Property. A lock box does not
61         ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock
62         box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor
63         Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
64*         ☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
65     **(f)** Act as a transaction broker.
66     **(g) Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These
67         websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or
68         reviews and comments about a property may be displayed in conjunction with a property on some VOWs.
69         Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews
70         about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or
71         comments and reviews about this Property.
72*         ☑ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such
73         estimate) to be displayed in immediate conjunction with the listing of this Property.
74*         ☑ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or
75         display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

76  7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
77     **(a)** Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to
78         **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
79     **(b)** Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during
80         reasonable times.
81     **(c)** Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
82     **(d)** Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature,
83         including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's**
84         negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the
85         existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker
86         who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This
87         clause will survive **Broker's** performance and the transfer of title.
88     **(e)** Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
89     **(f)** Make all legally required disclosures, including all facts that materially affect the Property's value and are not
90         readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such
91         material facts (local government building code violations, unobservable defects, etc.) other than the following:
92*         _____
93         **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
94     **(g)** Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting
95         requirements, and other specialized advice.

96  8. **Compensation: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing,
97     and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other
98     terms acceptable to **Seller. Seller** will pay **Broker** as follows (plus applicable sales tax):
99*     **(a)** 6_____% of the total purchase price plus $_____ OR $_____, no
100         later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's**
101         fee being earned.
102*     **(b)** _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is
103         exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this
104         subparagraph.

Seller [DDK] and Broker/Sales Associate [KM 06/28/18 6:35PM EDT] acknowledge receipt of a copy of this page, which is Page 2 of 4.
ERS-16tb  Rev 03/14  © 2014 Florida Association of Realtors®

105*     **(c)** _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106         agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107         contract granting an exclusive right to lease the Property.
108    **(d) Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by
109         sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether
110         the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111         price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112*        cancel an executed sales contract. (3) If, within __N/A__ days after Termination Date ("Protection Period"),
113         **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114         **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.
115         However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116         broker.
117*   **(e) Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive __0__% of all
118         deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the
119         Paragraph 8(a) fee.

120  **9. Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121     compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122     with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*   ☑ 2 % of the purchase price or $_____ to a single agent for the buyer; ☑ 2 % of the
124*   purchase price or $_____ to a transaction broker for the buyer; and ☑ 2 % of the purchase
125*   price or $_____ to a broker who has no brokerage relationship with the buyer.
126*   ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127 **10. Brokerage Relationship: Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128     for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129     the value of the residential property which are not readily observable to the buyer; will present all offers and
130     counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131     **Seller** unless waived in writing.

132 **11. Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133     **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
134*   expenses incurred in marketing the Property, and pay a cancellation fee of $_____0_____ plus
135     applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
136     8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
137     during the time period from the date of conditional termination to Termination Date and Protection Period, if
138     applicable.

139 **12. Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
140     matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
141     settled by first attempting mediation under the rules of the American Mediation Association or other mediator
142     agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
143     reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
144*   **Arbitration:** By initialing in the space provided, **Seller** [DDC], Sales Associate [ru 06/28/18], and **Broker** [ ]
145     agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
146     the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
147     agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
148     Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
149     equally split the arbitrator's fees and administrative fees of arbitration.

150 **13. Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151     administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152     Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153     will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154     will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155     The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156     of potential or actual transferees.

157* **14. Additional Terms:** The listing agreement and any sale of the property is subject to and conditioned
158  upon approval by the United States bankruptcy court.
159
160
161
162
163
164
165
166
167
168
169

170* **Seller's Signature:**
171* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
172* Address: _____
173* Email Address: _____
174* **Seller's Signature:** _D. K_ Trustee and alyas Trustee of 18-01724 Wilson
175* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
176* Address: _____
177* Email Address: _____
178* **Authorized Sales Associate or Broker:** Kavita Uttamchandani

dotloop verified
06/28/18 6:35PM EDT
ZXNQ-OMOY-3LFD-XSU8

179* Brokerage Firm Name: _____ Telephone: _____
180* Address: _____

181* | Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery. |

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller [DK] and Broker/Sales Associate [KU 06/28/18 6:35PM EDT] acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-16tb   Rev 03/14                                                                 © 2014 Florida Association of Realtors®

Licensed to dotloop, Inc. and